**HARDT et al. v. HELLER BROS. CO.**

**Civil Action No. 3802.**

District Court, E. D. Pennsylvania.

Aug. 21, 1947.

796

Harry Shapiro and Hirsch W. Stalberg, both of Philadelphia, Pa., for plaintiffs.

Frederick L. Ballard, Jr., and R. Sturgis Ingersoll, both of Philadelphia, Pa., for defendant.

KALODNER, Circuit Judge.

This action was brought by the plaintiffs, Walter K. Hardt and J. Stanley Hartzell, residents of Philadelphia, against the defendant, Heller Brothers Company, a New Jersey corporation, to recover compensation for services on a quantum meruit basis.

Two questions are presented for determination: (1) Are the plaintiffs entitled to recovery and (2) the extent of recovery, if allowed.

A jury trial was waived, and the case was submitted upon the pleadings and testimony adduced by both parties.

After consideration of the pleadings and the evidence, I make the following

### Findings of Fact

1. Defendant is a New Jersey corporation.

2. Plaintiffs are individuals residing in Philadelphia.

3. The amount involved in the controversy is in excess of $3,000, exclusive of costs and interest.

4. There is a diversity of citizenship between the parties.

5. For many years defendant has been and still is engaged in the business of manufacturing rasps, files, tools and other steel products.

6. Sometime prior to February, 1941, the defendant corporation decided to expand its manufacturing activities.

7. The expansion program contemplated both war work and post war work.

8. In order to carry out this expansion program it was necessary that the defendant corporation obtain from the Federal government a Certificate of Necessity in the amount of $1,500,000.

9. Walter Heller is the treasurer of the defendant company and has been for the past fifteen years.

10. Walter Heller was duly authorized to do all things necessary to effectuate the expansion program and to employ others for that purpose in the course of such activity.

11. Arthur H. Hunter, assistant to the president of the defendant company and one of its operating and production personnel, was placed in charge of the expansion program and authorized to procure persons to perform services necessary to achieve the accomplishment of this expansion program and particularly to secure a Certificate of necessity.

12. The defendant held out Hunter as an officer and director of the defendant corporation.

13. Prior to February, 1941, Hunter, with the defendant's knowledge and consent, employed a firm in New York known as the Executive Engineers to obtain a Certificate of Necessity.

14. Executive Engineers failed in their efforts to obtain a Certificate of Necessity.

15. On or about February 10, 1941, Hunter met the plaintiffs at the Union League Club in Philadelphia, and requested them to perform services for the defendant in and about the procuring of a Certificate of Necessity in the amount of $1,500,000.

16. On or about February 17, 1941, plaintiffs met with Hunter, Walter Heller and other representatives of the defendant company in Newark, N. J., at the place of business of defendant company.

17. At the aforesaid meeting Walter Heller requested the plaintiffs to perform services for the defendant, and to undertake the task of obtaining a Certificate of Necessity in the amount of $1,500,000 for the defendant.

18. Plaintiffs accepted the employment at the said meeting in Newark, New Jersey, and agreed to perform the services.

19. Simultaneously plaintiffs requested an advance for expenses.

20. Walter Heller at the said time and place stated to the plaintiffs that it would be satisfactory even if the expenses amounted to $100,000, and that in addition the plaintiffs would be well paid for their services.

21. At a subsequent conversation some three weeks later both Walter Heller and Hunter stated to the plaintiffs that they would be suitably compensated for their services.

22. Plaintiffs entered upon the duties of their employment immediately after the Newark meeting held on February 17, 1941.

23. On behalf of defendant, plaintiffs made a thorough study and examination of the plant, equipment, organization, personnel, history, finances, and capacity of the defendant; compiled relevant data; made many trips to Newark and Washington; conferred frequently with defendant's officers and with government officials in Washington whose duty it was to pass on the application for a Certificate of Necessity; prepared and submitted requisite information to these officials in Washington; planned and directed the presentation of the defendant's application.

24. The plaintiffs successfully performed the services which they were employed to render and secured for defendant a Cer-

tificate of Necessity in the sum of $1,500,000 on July 3, 1941.

25. The defendant availed itself of the Certificate of Necessity to the extent of $114,575.23.

26. The sales of the defendant before the war approximated a million dollars a year and the defendant represented to the War Department that the new equipment would increase the sales to about six million dollars a year.

27. Plaintiffs in the course of their employment and in its furtherance, engaged the law firm of Cummings and Stanley in Washington, D. C.

28. The officers of the defendant were informed of and acquiesced in all the things done by plaintiffs in the course of and performance of their employment and services.

29. Defendant company by its duly authorized officers advised officials in Washington who were passing upon the application for the Certificate of Necessity that the plaintiffs were authorized to act for and sign papers in behalf of the defendant.

30. Defendant received, accepted and enjoyed the benefit of the plaintiffs' services in the approval and issuance of the Certificate of Necessity.

31. The plaintiffs have not been paid for the services rendered to the defendant.

32. Plaintiffs incurred travelling and hotel expenses necessary in the performance of their services for defendant.

33. The plaintiff Hardt, was a man of extensive business experience. He was a consultant in financial matters to substantial industrial corporations.

34. The plaintiff Hardt, who was a graduate of the University of Pennsylvania and a certified public accountant, had taught accountancy at the University of Pennsylvania. He has held important positions in a number of banking institutions in Philadelphia. He had been president of the Integrity Trust Company at a salary of $50,000 per annum and subsequently chairman of its Finance Committee. At the present time he is president of the Girard Life Insurance Company.

35. The plaintiff Hardt has had experience in commercial credits, loans, investments, foreign exchange, bankruptcies, reorganizations, trusteeships and matters having to do with financial undertakings.

36. An oral contract existed between the plaintiffs and the defendant under the provisions of which plaintiffs were to procure a Certificate of Necessity in the amount of $1,500,000 for the defendant and the defendant was to pay plaintiffs for their services in connection therewith.

37. While plaintiffs were engaged in their efforts to obtain the Certificate of Necessity, the defendant through Walter Heller and Hunter orally engaged the plaintiffs for the purpose and in connection with obtaining a loan in the amount of $1,500,-000 from the Reconstruction Finance Corporation.

38. The services rendered by the plaintiffs in connection with the contemplated loan from the Reconstruction Finance Corporation were primarily in connection with its arrangement.

39. The Reconstruction Finance Corporation informally approved the loan subject to the filing of application by the defendant.

40. Defendant changed its mind, never applied for the loan and the loan was never consummated.

41. An oral contract existed between the plaintiffs and the defendant under the provisions of which plaintiffs were to secure a loan from the Reconstruction Finance Corporation in the amount of $1,500,000 for the defendant.

42. Defendant ratified the employment of the plaintiffs.

43. The fair value of the enumerated services rendered by the plaintiffs to defendant in and about securing the Certificate of Necessity is $45,000.

### Discussion.

The defendant employed the plaintiffs to obtain a Certificate of Necessity in the amount of $1,500,000, and also a loan from the Reconstruction Finance Corporation in a similar sum. The Certificate of Necessity was granted and the defendant availed itself to the extent of $114,575.23. Although the Reconstruction Finance Corporation loan was approved, the defend-

ant changed its mind regarding it and the loan was never consummated.

In order that manufacturers might expand their facilities under the emergency war program, Congress made provisions for the issuance of the so-called Certificate of Necessity by the War Department. Upon application showing proper equipment, financing and organization, certificates were issued certifying that a contemplated purchase or erection of plant or equipment was an emergency facility necessary in the war effort. The successful applicant was permitted to amortize the costs of these emergency facilities in five years at the rate of twenty per cent a year, permitting enormous tax savings.

■ The plaintiffs rendered valuable services to the defendant, and by reason of their efforts they succeeded in having the Certificate of Necessity granted in the amount of $1,500,000. They are entitled to be paid for the fair value of their services. It is true that the defendant availed itself of only a fraction of advantages secured for it, but plaintiffs fully accomplished the undertaking for which they were engaged and should be compensated accordingly.

■ In determining the value of personal services furnished and the amount of compensation due therefor, consideration must be given to the quantum, nature of the services rendered, the labor, the time, and trouble involved, the character and importance of the work performed, the amount of money or value of the property affected, the skill and experience called for, the standing of the one rendering the services in his field of activity, the general ability of the client to pay and the pecuniary benefit derived from the services.[1] The details of these factors are in my Findings of Fact.

By reason of the peculiar nature of the services rendered by the plaintiffs standards of value applicable to these services are not available. The capacity and knowledge of the plaintiffs as individuals and particular persons were the very reason for their selection and, if plaintiffs are to be believed, for their success. For this reason also the plaintiffs' services and accomplishments cannot be measured by similar services and accomplishments. Nor does the securing of Certificates of Necessity fall within any recognized business or profession.

■ Hardt, one of the plaintiffs, testified that the value of his services in connection with the procuring of the Certificate of Necessity was $125,000. It is my opinion that he was a competent witness.

"Where the testimony is directed not so much to a class of services as to those of a *particular person* in view of his individual qualities, the testimony of a person who had employed that individual might be receivable even though he had no general knowledge of such services as a class. *It would be a hard rule which would prevent a plaintiff from informing the jury of his own estimate of the value of his services; and the Courts seem inclined to impose no terms as to his general familiarity with the class of service; that he has rendered them justifies listening to his opinion.*" Wigmore on Evidence, 3rd Edition, Vol. 3, Section 715, page 47 (emphasis supplied).[2]

■ The defendant produced two accountants, McConnell and Steinmeyer, members of reputable accounting firms who testified that the fair, reasonable and customary charges of accounting firms for services in relation to the preparation and filing and procuring of Certificates of Necessity is $50 a day for the staff man who actually does the work and $100 a day for the supervision. The difficulty with this testimony is that it relates merely to the services of *an accountant* who is to be paid on a per diem basis regardless of the successful realization of the client's objectives. The employment of the plaintiffs here was of a different character. However, I be-

[1] Ridder Brothers, Inc., v. Strassburger, 1943, 154 Pa.Super. 524, 36 A.2d 191; Hanley v. Waxman, 1922, 80 Pa.Super. 274.

[2] Seth Thomas Clock Company v. Dobbins, 1901, 16 Pa.Super. 325; Franke v. Middle City Realty Corporation, 1923, 3 Pa.Dist. & Co. R. 712, citing Wigmore with approval; Chmiel v. Yatsko, 1940, 124 N.J.L. 508, 13 A.2d 219.

lieve that the evidence is admissible under the circumstances of this case for whatever it is worth in indicating the value of one of the several factors enumerated in the statement of applicable principles.

As already indicated there is really no "expert" who can testify as to the value of the services rendered here and as it was stated in Ridder Brothers, Inc., v. Strassburger, 1943, 154 Pa.Super. 524, at page 527, 36 A.2d 191, at page 192:

"In order to prove the reasonable value of personal services it is not always necessary to introduce the testimony of experts, and whether the contention requires expert testimony is largely in the discretion of the trial judge."

And in Ryder v. Jacobs, 1897, 182 Pa. 624, 630, 38 A. 471, 472, the Supreme Court of Pennsylvania has stated:

"We do not deprecate the production of expert testimony in sciences and subjects with which the people are not generally familiar, but it must be borne in mind that jurymen are yet presumed to have some knowledge, and to be able to form opinions from their own observation."

I have therefore allowed the plaintiffs the sum of $45,000 for their services in connection with the obtaining of the Certificate of Necessity.

I do not believe that the plaintiffs are entitled to any compensation for their services relating to the Reconstruction Finance Corporation loan. The provisions of Sections 13–15, in Title 13 of the Code of Federal Regulations of the United States, absolutely prohibits the payment of any fee "for the purpose of, or in connection with, obtaining loans," and as phrased in the complaint, the plaintiffs' claim is for "securing" and "obtaining approval" of the R. F. C. loan.

At the trial of the case the plaintiff Hardt testified that he had engaged the services of the law firm of Cummings and Stanley and had been rendered a bill for the sum of $40,000. The bill was not available at the time. At a subsequent hearing, some time after the major testimony was closed, counsel for plaintiffs produced the following copy of a bill:

"July 15, 1941
"Messrs. Walter K. Hardt and Stanley Hartzell and Heller Bros. Inc.
"Newark, New Jersey

"To professional services rendered Messrs. Hart and Hartzell in connection with certificate of necessity, conferences with various Government departments and corporation officers regarding refinancing plans of Heller Bros; conferences with Heller Bros. re same; conferences with Procurement agencies of War Department and Bureau of Aeronautics of the Navy regarding expansion of the Heller Bros. properties in New Jersey; preparing memoranda of law; conferences with the officers of Federal Reserve Bank in New York and various individuals in Pittsburgh, Philadelphia and Chester, Pa............$30,000.00
"Payment Received
"Cummings & Stanley
"By

"Note:
"Payments agreed to be made as follows:
Due July 15, 1941      $ 7500.00
Due August 15, 1941      15000.00
Balance to be due at
conclusion of work.

Counsel for defendant objected to the admission of this copy in evidence, and plaintiffs' counsel stated that he would attempt to produce a member of the law firm of Cummings and Stanley to testify with respect to this bill. It was finally agreed that if within twenty-four hours the plaintiffs did not desire to offer any further testimony with respect to the bill the defendant would withdraw his objection. Plaintiffs subsequently advised the court that the witness was not available because he was leaving about this time for South America. The case was therefore closed with the record as it now stands.

I have considered the bill as admissible only for the purpose of corroboration that the plaintiffs employed the law firm. I have given it no probative value because on its face it discloses that it was for services rendered in connection with both the Certificate of Necessity and the R. F. C. loan and there was no further testimony as to the charge for each item. Under the circumstances any attempted es-

timate as to how much of the Cummings and Stanley services may be attributed to the Certificate of Necessity alone would be speculative and thus improper.

The Certificate of Necessity was granted on July 3, 1941. The bill is dated July 15, 1941, and provides for payments on July 15, 1941; August 15, 1941; and the "balance to be due at the conclusion of the work." I have limited the compensation of the plaintiffs to the services in connection with the Certificate of Necessity and this work was completed July 3, 1941. There are references in the said bill to "refinancing plans of Heller Brothers" and "conferences with the officers of the Federal Reserve Bank of New York." This apparently refers to the loan of the Reconstruction Finance Corporation and I have ruled that the plaintiffs are not entitled to any recovery for this employment.

In accordance with the above I state the following

## Conclusions of Law

1. This Court has jurisdiction over the parties and the subject matter.

2. The defendant entered into an oral contract with the plaintiffs under which the plaintiffs agreed to perform services for the defendant in the securing of a Certificate of Necessity in the amount of $1,500,000 and a Reconstruction Finance Corporation loan in like amount and the defendant agreed to pay the plaintiffs suitable compensation for such services and their expenses.

3. The plaintiffs having successfully performed the services called for in the oral contract of employment in the securing of a Certificate of Necessity in the sum of $1,500,000, and the defendant having accepted and reaped the benefit of plaintiffs' services, the plaintiffs are entitled to a reasonable compensation therefor.

4. Plaintiffs are entitled to recover from the defendant the sum of $45,000 as fair and reasonable compensation for their services in the securing of the Certificate of Necessity, with interest thereon from July 3, 1941.

5. The plaintiffs are not entitled to recovery for their services in arranging and obtaining the Reconstruction Finance Corporation loan under the provisions of Sections 13-15, Title 13 of the Code of Federal Regulations of the United States of America.

An order may be submitted in accordance with this opinion.